UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ANTHONY V. McLAUGHLIN, JR.,**                              Chapter 7
    Debtor                                                Case No. 11-12459-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ANTHONY V. McLAUGHLIN, JR.,**
    Plaintiff
v.                                                            Adv. P. No. 11-1242

**ASCELLA MORTGAGE, LLC.,**
**BLACK DOG TITLE, LLC, WELLS FARGO**
**BANK, N.A.,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "Motion to Dismiss Complaint or in the Alternative Abstain from Exercising Jurisdiction," filed by Defendant Wells Fargo Bank, N.A., as Trustee under the Pooling and Servicing Agreement Dated as of October 1, 2006 Securitized Asset Back Receivables LLC Trust 2006-WM2 Mortgage Pass-Through Certificates, Series 2006-WM2 ("Wells Fargo"). Wells Fargo seeks dismissal of the Complaint filed by Anthony V. McLaughlin, Jr. (the "Debtor") against it pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b) on the ground that the Complaint fails to set forth a plausible claim for relief. The Debtor opposes

the Motion to Dismiss.

The Court has reviewed Wells Fargo's Motion and the Debtor's Opposition, as well as the status of the Debtor's Chapter 7 case. The Court shall enter an order dismissing the Debtor's Complaint on grounds different than those set forth in Wells Fargo's Motion. The Court concludes that the Debtor lacks standing to prosecute claims that are property of his bankruptcy estate.

## II. PROCEDURAL BACKGROUND

The Debtor filed a Chapter 7 petition on March 24, 2011. On April 8, 2011, he filed his Schedules of Assets and Liabilities. On Schedule A-Real Property, he listed an ownership interest in 8 Tony Terrace, Bridgewater, Massachusetts (the "Property") with a current value of $270,000, subject to a secured claim in the amount of $384,540. The Debtor did not disclose the nature of his ownership interest (i.e., fee simple, joint tenant, etc.). On Schedule B-Personal Property, the Debtor did not disclose the existence of any claims against Wells Fargo, Ascella Mortgage, LLC ("Ascella") or Black Dog Title, LLC ("Black Dog") (collectively, the "Defendants"). The Debtor neither claimed the Property nor the claims set forth in his Complaint as exempt on Schedule C. The Debtor also filed a Statement of Financial Affairs in which, in response to question 4 regarding suits and administrative proceedings, executions, garnishments and attachments, he responded "None."

On April 8, 2011, the Debtor filed his Statement of Intention. He indicated that he intended to surrender the Property. On April 27, 2011, the Chapter 7 Trustee filed a Report

of No Distribution; on July 12, 2011, the Debtor received a discharge.

On June 22, 2011, Wells Fargo filed a Motion for Relief from the Automatic Stay. The Debtor filed an Opposition to the Motion; the Chapter 7 Trustee did not. On July 23, 2011, the Debtor commenced the adversary proceeding against the Defendants. On September 2, 2011, Wells Fargo withdrew its Motion for Relief from the Automatic Stay.

### III. THE ADVERSARY PROCEEDING

The Debtor filed an eight count Complaint against the Defendants, seeking redress for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226, as well as the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605 and Regulation X, 24 C.F.R. § 3500; the Massachusetts Consumer Credit Cost Disclosure Act ("CCCDA"), Mass. Gen. Laws ch. 140D, § 1 et seq.; Mass. Gen. Laws ch. 93A; and the Predatory Home Loan Practices Act., Mass. Gen. Laws ch. 183C, §§ 1-19. The Debtor also asserted common law claims for unjust enrichment, and fraud and deceit.

The Debtor's Complaint contains nine separately numbered "Factual Allegations," as well as a number of additional allegations pertinent to each of his eight counts. The Court summarizes the contents of the Complaint below. The Court observes that not only is the Complaint poorly drafted, Debtor's counsel omitted information that would have made the Complaint explicable, such as the amount of the loan, the relationship between Ascella and Black Dog, if any, and Black Dog's role at the loan closing.

In his Complaint, the Debtor alleged that in April of 2006 he was contacted by

3

Ascella "in response to direct marketing" and that Ascella "induced Plaintiffs [sic] to execute documents for a loan arrangement they could not afford." The Debtor added that when they (presumably the Debtor and his non-debtor spouse) complained, Ascella assured them that within three (3) months "they would qualify for a refinancing . . . which would bring them to a level they could afford." The Debtor referenced a letter from Ascella, dated May 25, 2006, in which it promised to refinance the mortgage with no points in three months "on one condition: Borrower's [sic] must maintain a clean mortgage history until they look to refinance again."

The Debtor further alleged that he met "all the conditions of the refinancing opportunity expressed both orally and in the May 25, 2006 communication from Ascella" but Ascella "neglected and refused to follow through on the refinancing promised." He also alleged that Ascella "wrongfully and without authority signed plaintiffs names [sic] to documents and agreements" associated with the Note and Mortgage and that "as a result of the forgeries, Plaintiffs suffered substantial damages."

The Debtor further alleged in his Complaint that Truth in Lending disclosures were inaccurate and confused him "as to the actual interest rate, payments, payment change dates, and the amount of the changes." He also complained that the "Servicing Disclosure Statement" identified the lender as Ascella, not Wells Fargo, and was a source of additional confusion for him.

The Debtor also alleged that he received a telephone call from Black Dog, "indicating that he would have to conduct the closing at the hood [sic] of his car that had

4

to be done the same day, [sic]" adding that "[h]e was hurried through the closing because the closing attorney did not have time." Additionally, he alleged that Black Dog did not explain the nature of the loan, the terms of the loan or tell him he had a right to cancel the transaction until midnight of the third business day following the closing. The Debtor complained that the HUD-1 was not explained to him and that he was only allowed to glance at the fees and charges on the document. Finally, the Debtor alleged that closing costs totaled $11,282.53, which was 2.9% of the loan amount; that Ascella received a yield spread premium of $5,491 or 1.4%; and that Black Dog received $2,202.50 for "what should have been passed through costs and appears to have been charged for phantom services."

Through Count I, captioned "Unjust Enrichment," the Debtor stated, without any specificity or the identification of a particular Defendant, "Defendant's [sic] wrongful conduct . . . led to their unjust enrichment," entitling him to equitable remedies, including disgorgement, restitution and related injunctive relief. Through Count II, captioned "Violation of RESPA," he stated, without specificity, that "Defendants failed to follow procedures under 12 U.S.C. § 2605 and Regulation X."

Through Count III, captioned "Violation of Truth in Lending Act and M.G.L. 140D," the Debtor alleged, without any predicate allegations or explanation, that Wells Fargo cannot raise "a third party defense," that he did not receive a disclosure statement in conformity with the Massachusetts CCCDA and TILA which accurately set forth the required information, and that "[t]he fact that the Truth in Lending Disclosure Statement intentionally and maliciously omits any reference to or indication of rate changes is proof

5

of the defendants bad faith and intent to misrepresent the loan product being sold to the Plaintiff [sic]." The Debtor further alleged that "the Defendants have violated G.L. c 140D sec. 12(a) and 15 U.S. sec 1638(a) [sic]" entitling him to remedies under Mass. Gen. Laws ch. 140D, § 32 and 15 U.S.C. § 1640(a). Through Count IV, captioned "Rescission under Truth in Lending," the Debtor stated that he "hereby rescinds the transaction." He alleged that he "never received a package of documents at the time of closing, some of which were signed, some were not, but the package does not contain 2 Notices of Right to Cancel. [sic]"[1]

Through Count V, captioned "Unfair and Deceptive Trade Practices," the Debtor complained that the Defendants [sic] engaged in deceptive practices "[b]y failing to disclose the true cost and nature of the Note being sold to him," and "by failing to disclose . . . the amount of rate changes each year. . . ."

Through Count VI, captioned "Lender Liability - - Fraud and Deceit," the Debtor without identifying any particular Defendant or any particular individual or agent of a Defendant, alleged that the Defendant knew his loan history and cash flow prior to the transaction; that it represented that the Note and Mortgage were "normal" and "customary" and did so with intent to defraud him. He alleged that the Defendant "did not in any meaningful way inform the Plaintiff that his loan would continue to adjust

---

[1] Wells Fargo attached the Note and Mortgage to its Memorandum. The Debtor failed to allege that he executed the Note and that both he and his non-debtor spouse executed the Mortgage.

wherein the plaintiff had a fixed rate loan previously."[2]

Through Count VII, captioned "Violation of Massachusetts General Laws Chapter 183C Predatory Home Loan Practices," the Debtor, without specificity, alleged that the Mortgage is a high cost home loan as "the total points and fees exceeds 5% of the total loan amount"[3] and that "Wells Fargo is precluded from asserting any defense against claims and defenses raised by Plaintiff, in accordance with Section 15 of the statute."

Through Count VIII, captioned "Violation of Massachuset General Laws Chapter 93A," the Debtor alleged that the Defendants "acted without good faith and fair dealing" and engaged in unfair and deceptive trade practices. He did not allege that he sent a Chapter 93A demand letter to any of the Defendants prior to filing suit.

**IV. THE MOTION TO DISMISS OR IN THE ALTERNATIVE ABSTAIN FROM EXERCISING JURISDICTION AND THE DEBTOR'S OPPOSITION**

Wells Fargo seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012, on the ground that the Complaint fails to state a cause of action that satisfies the standard articulated by the Supreme Court in Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009). Citing Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which

---

[2] The Note in at least 14 point type and in capitalized bold face bears the caption, "Adjustable Rate Note."

[3] The Debtor failed to allege the loan amount and did not itemize the total points and fees.

7

is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"), Wells Fargo observes that when a complaint relates to a loan obligation and the enforcement of a mortgage, the loan documents are incorporated within the Complaint and may be considered in connection with a motion to dismiss. Additionally it observes that a court can take judicial notice of its own records, citing, *inter alia,* In re Lowenstein, 361 B.R. 326, 330 n. 3 (Bankr. D. Mass. 2000), as well as judicial notice of relevant proceedings in other courts, citing Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).

In addition to seeking dismissal under Fed. R. Civ. P. 12(b)(6), Wells Fargo maintains that the Debtor should be judicially estopped from pursuing his claims, which existed before the commencement of his bankruptcy case, because he failed to disclose them on Schedule B. It relies upon the decision of the United States Court of Appeals for the First Circuit in Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.), Inc., 989 F.2d 570, 571 (1st Cir. 1993),[4] and this court decision in Sullivan v. Decision One Mortg. (In re Sullivan), 346 B.R. 4, 31-32 (Bankr. D. Mass. 2006).

---

[4] In Payless Wholesale Distribs., Inc., the First Circuit stated:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in return for all one's assets, except those exempt, as a result of which creditors release their own claims and the bankrupt can start fresh. Assuming there is validity in Payless's present suit, it has a better plan. Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively.

989 F.2d at 571.

8

Wells Fargo also asks the Court to abstain from exercising jurisdiction because the claims asserted by the Debtor are not core under 28 U.S.C. § 157(b)(2). Assuming the Debtor's claims are "related -to" the Debtor's bankruptcy case, it urges the Court to abstain under 28 U.S.C. § 1334(c)(1). It references the pendency of an action by the Debtor and his spouse in the Plymouth Superior Court, Department of the Trial Court, in which they asserted a six- count Counterclaim against Wells Fargo for breach of contract, fraud and misrepresentation, illegality, forgery, fraud in the essence, and violation of Mass. Gen. Laws ch. 93A, as well as a "Cross Claim" against Ascella with the same six counts.[5] Wells Fargo conceded that the Superior Court denied a motion to dismiss the Counterclaim filed by Wells Fargo.

The Debtor in his Opposition to Wells Fargo's Motion recites "Facts as Set Forth in the Complaint." The "facts" which the Debtor sets forth in his Memorandum and those which he states were set forth in his Complaint are not the same. The Debtor engaged in a wholesale rewriting of his Complaint in his Memorandum as most of the facts set forth in the Memorandum are not present in the skeletal Complaint filed on July 23, 2011. For example, the Debtor states that "Ascella knew that McLaughlin was desperate for a loan due to the existence of a federal tax lien in the amount of approximately $160,000 against the Property." The existence of the tax lien was not set forth in the Complaint. Neither the

---

[5] Because Ascella was not a party to the action brought against the Debtor and his non-debtor spouse, the claims they asserted against Ascella in the state court properly should have been advanced by them as third party plaintiffs against Ascella as a third party defendant.

9

amount of the Adjustable Rate Note nor the monthly payments were disclosed in the Complaint, yet the Debtor asserts that those facts are "facts set forth in the Complaint." In his Memorandum in the section captioned, "Facts Set Forth in the Complaint," the Debtor also refers to assignments of the Note and Mortgage by Ascella to WMC Mortgage Corp. and subsequent assignments by that entity to MERS and by MERS to Wells Fargo. Those facts are not set forth in the Complaint. Additionally, the Debtor references the Superior Court action in his Memorandum, although it was not mentioned in his Complaint.

Referencing documents attached to Wells Fargo's Memorandum, the Debtor maintains that the "law of the case" doctrine applies and compels this Court to deny Wells Fargo's Motion to Dismiss. Additionally, he erroneously asserts that he "utilized the removal authority granted by 28 U.S.C. § 1446(a) as it applies to claims related to bankruptcy cases," adding that "[r]emoval was accomplished by filing the adversary proceeding in the Court, as authorized by 28 USCS § 1452." Without referencing Fed. R. Bankr. P. 9027 or complying with any of its provisions, the Debtor states "removal was accomplished on July 23, 2011, by the filing of a Complaint in this Court and the filing of the suggestion of bankruptcy in the Superior Court." The Superior Court action was not removed to this Court, and, as noted above, the Counterclaim and Cross Claim asserted in the Superior Court are not identical to the Complaint filed in this Court.

The Debtor also attempts to distinguish <u>Payless</u> on the ground that it was a Chapter 11 case while his case is a case under Chapter 7. He attempts to distinguish <u>Sullivan</u> on the ground that the nondisclosure of claims against a mortgagee by a debtor occurred in a

10

previously filed case.

## V. DISCUSSION

The Debtor's causes of action against the Defendants existed at the commencement of his Chapter 7 case. As a consequence, his claims against the Defendants are property of the Debtor's bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (property of the estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case."). The Debtor did not list those claims on Schedule B, he did not disclose the pendency of the action in the Plymouth Superior Court in his Statement of Financial Affairs, and he did not claim the causes of action as exempt from property of the estate pursuant to 11 U.S.C. § 522(b).

Although the Trustee has filed a Report of No Distribution in the Debtor's Chapter 7 case, the Court cannot find a deemed abandonment of the causes of action. *See* In re Bast, 366 B.R. 237 (Bankr. S.D. Fla. 2007). In that case, the court stated: "If an asset is disclosed, and is not administered during the course of the bankruptcy proceeding, it is deemed abandoned once the case is closed." Id. at 239 (citing In re Reed, 178 B.R. 817 (Bankr. D. Ariz. 1995)). The court added: "The rationale for the general rule is that once an asset has been abandoned, it is no longer part of the estate and is effectively beyond the reach and control of the trustee." Id. (citing DeVore v. Marshack (In re DeVore), 223 B.R. 193 (B.A.P. 9th Cir. 1998)). Because the Debtor did not disclose his causes of action and his Chapter 7 case is not closed, the Court cannot find that the Trustee's Report of No Distribution constitutes a deemed abandonment. Accordingly, the causes of action remain property of

the Debtor's bankruptcy estate and the Debtor lacks standing to prosecute the claims. *See*

In re Arana, __ B.R.__, 2011 WL 4424280, *6 (Bankr. E.D.N.Y. Sept. 22, 2011) (". . . during the pendency of a bankruptcy case, the debtor does not have standing to initiate or pursue an action based on a prepetition claim unless the trustee abandons it back to the debtor");

In re Robert, 432 B.R. 464 (Bankr. D. Mass. 2010). As the court noted in Robert,

> While disclosed assets are deemed abandoned upon the closing of a Chapter 7 bankruptcy estate, 11 U.S.C. § 554(c), "'property that is not formally scheduled is not abandoned and therefore remains part of the estate,'" Welsh, 199 B.R. at 229 (quoting Rosenshein v. Kleban, 918 F.Supp. 98, 102–03 (S.D.N.Y.1996)). Because the Debtors' undisclosed Refinancing Claims were never abandoned by operation of § 554, they remain property of the Chapter 7 bankruptcy estate and the former Chapter 7 trustee is the only party with standing to prosecute those claims. Accordingly, the Debtors cannot pursue those claims here, and the Court must grant the Motion to Dismiss as to all claims that arose in connection with the Refinancing.

Id. at 471 (footnotes omitted). *See also* Brooks v. Beatty, 25 F.3d 1037, 1994 WL 224160 (1st Cir. May 27, 1994) (plaintiff lacked standing to bring claim that existed prior to Chapter 7 bankruptcy filing which was not disclosed in the bankruptcy case; claim remained property of bankruptcy estate and only Chapter 7 trustee had standing to pursue the claim);[6] Schafer

---

[6] The First Circuit stated:

Brooks concedes that the cause of action against ComFed should have been scheduled as an asset in her chapter 7 proceeding. *See* 11 U.S.C. § 541(a)(1). It is equally clear that the ComFed action became property of the chapter 7 estate. Carlock v. Pillsbury Co., 719 F. Supp. 791, 856 (D. Minn. 1989) ("A cause of action is a property right which passes to the trustee in bankruptcy, even if such cause of action is not included in schedules filed with the bankruptcy court."). Further, because the ComFed action was not scheduled as an asset, it was never abandoned by the chapter 7 trustee. *See* 11 U.S.C. § 554(d); United States v. Grant, 971 F.2d 799, 803 n. 4 (1st Cir. 1992) ( en banc ) (holding that abandonment by trustee "does not

Case 11-01242    Doc 25    Filed 10/21/11    Entered 10/21/11 16:07:17    Desc Main
              Document      Page 13 of 14

v. Decision One Mortg. Corp., No. 08-5653, 2009 WL 1532048, *4 (E.D. Pa. May 29, 2009) (where plaintiff failed to disclose TILA claims that arose prior to plaintiff's filing Chapter 7 bankruptcy petition, she could not later assert the claims in her own name, as the claims "remain property of the estate, and only the trustee in bankruptcy has the standing to pursue them"); Tennyson v. Challenge Realty (In re Tennyson), 313 B.R. 402, 406 (Bankr. W.D. Ky. 2004) (undisclosed rescission claim was not abandoned by Chapter 7 Trustee by operation of § 554; therefore, the claim remained property of the bankruptcy estate and the Chapter 7 trustee was the party with standing to pursue the claims); *accord* Graupner v. Town of Brookfield, 450 F.Supp.2d 119, 129 (D. Mass. 2006) (where plaintiff failed to disclose claim in Chapter 7 bankruptcy case, party with standing to bring claim remained the Chapter 7 trustee).

The Court observes that even were the Chapter 7 Trustee to file a Notice of Abandonment with respect to the Debtor's claims, the Court would be compelled to dismiss the adversary proceeding for lack of jurisdiction. *See* Povah v. Hansbury and Finn, Inc. (In re Povah), __ B.R. __, 2011 WL 3667670 at *13-14 (Bankr. D. Mass. Aug. 22, 2011); In re Harris, 450 B.R. 324, 334,35 (Bankr. D. Mass. 2011). Moreover, the dismissal of the

---

relinquish an undisclosed interest in property") (emphasis in original, citing Dushane v. Beall, 161 U.S. 513, 516 (1896)); *see also* Krank v. Utica Mutual Ins. Co., 109 B.R. 668 (E.D. Pa.), *aff'd*, 908 F.2d 962 (3d Cir. 1990). Thus, Brooks lacks standing to prosecute the present action.

1994 WL 224160 at * 3.

adversary proceeding would have no impact on Wells Fargo's ability to raise judicial estoppel in the Superior Court Action if the Trustee fails to substitute himself as plaintiff in the adversary proceeding. *See* In re Tennyson, 313 B.R. at 406-07.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order dismissing the Complaint for lack of standing, unless the Chapter 7 Trustee moves to substitute himself as plaintiff in the adversary proceeding.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 21, 2011